**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **ANTHONY XAVIER GRACE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 5:09-CV-418 (CAR)** |
| | : | |
| **Sergeant TIMOTHY MOORE &** | : | |
| **Sergeant CHARLES WHITAKER,** | : | |
| | : | |
| **Defendants.** | : | |

_____

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendants Timothy Moore ("Moore") and Charles Whitaker's ("Whitaker") Motion for Summary Judgment [Doc. 20]. Plaintiff brings a section 1983 action alleging that Defendants violated his Fourth and Fourteenth Amendment rights by engaging in false arrest, malicious prosecution, and defamation against Plaintiff. He also brings analogous claims under state law. Defendants contend they did not violate any of Plaintiff's constitutional or state-law rights and they are entitled to qualified immunity on Plaintiff's constitutional claims and official immunity under Georgia law on Plaintiff's state-law claims. Having considered the matter, the Court finds that Defendants did not violate Plaintiff's Fourth or Fourteenth Amendment rights. Accordingly, the Court **GRANTS** summary judgment in favor of Defendants on Plaintiff's section 1983 claims alleging false arrest, malicious prosecution, and defamation. The Court also **GRANTS** summary judgment in favor of Defendants on Plaintiff's state-law false arrest and malicious prosecution claims. However, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law defamation claim. Accordingly, the Court **DISMISSES** that claim **WITHOUT**

1

PREJUDICE.

## I. BACKGROUND[1]

On December 5, 2008, Plaintiff set out looking to earn some money by doing some remodeling work. In order to travel to the job site, Plaintiff borrowed a friend's minivan. While traveling that morning, Plaintiff came across two other men, Virgil Burton Jr. and Jeremy Hicks. Plaintiff inquired if they wanted to do some work with him that day. Both men joined his enterprise. Before heading out to the job site to begin working, Plaintiff decided that he needed to collect some gas money in order to ensure he would have enough gas to travel out to the job site and back home afterwards. Remembering that a man by the name of Jacquian Carson owed him some money, Plaintiff went in search of Carson to collect on his debt. At around 11 a.m. that morning, Plaintiff drove to Lowe Street in Macon, Georgia, the site of Carson's home. Plaintiff apparently saw Carson out on the street, so he parked the minivan on the side of the road and got out to go talk to Carson. It was at this point that Plaintiff's path intersected with the Macon Police Department, specifically Sergeant Timothy Moore.

That same morning, Defendant Moore was participating in a multi-agency operation headed by the Gang Unit of the Macon Police Department, of which Moore is a member. Defendant Moore was part of one of several teams that was searching various areas of Macon for individuals on probation. Defendant Moore and his group traveled to the Lowe Street area in search of a man named Carlos Shelly. As Defendant Moore entered the Lowe Street area, he saw Plaintiff's van

---

[1] Because the Court is considering Defendants' Motion for Summary Judgment, the facts below are set forth in the light most favorable to Plaintiff.

parked off the side of the road and two men standing behind it.[2]

Defendant Moore approached the van to determine whether any of the men outside the van or its occupants were Carlos Shelly. Defendant Moore recounts the encounter as follows. He first spoke to the occupants of the van, Hicks and Burton. He asked them several questions: who was driving the vehicle; whether they knew or were Carlos Shelly; who they were; and whether they were on probation. While talking to Hicks and Burton, Defendant Moore observed what he believed to be the remains of a marijuana cigar, a "blunt," in the ashtray in the console of the vehicle. After finishing his initial inquiry with Hicks and Burton he asked them to exit the vehicle. He then made similar inquiries to Plaintiff and Carson.

Defendant Moore's questions elicited the following information: Carlos Shelly was not amongst the group; the two men standing outside the van were Plaintiff and Carson; the two men he first encountered in the van were Hicks and Burton; Plaintiff was the driver of the van; and Hicks, Burton, and Carson were on probation. Defendant Moore then ran all of the men's names through NCIC/GCIC to search for warrants. His search disclosed that there was a warrant out on Plaintiff for failure to appear.[3]

---

[2]     Plaintiff attempts to dispute these facts by citing a litany of other deposition and declaration evidence that does not actually controvert these seemingly basic and accepted facts in any facially apparent way. Plaintiff's recitation appears to be an attempt to establish some sort of motivation, perhaps even a nefarious one, for the entire operation. Regardless of whether the testimony cited by Plaintiff supports these insinuations, the testimony does not in any way controvert the facts that Defendant Moore was acting as part of a large operation that morning, that he was looking for someone named Carlos Shelly, and that in looking for Shelley he happened across Plaintiff and his companions in the van.

[3]     Again, Plaintiff launches a broad-based attack on many of these facts without any particular supporting evidence that controverts these facts. Plaintiff does marshal certain evidence in terms of his own declaration that states, in short, that there was no marijuana in the van and that any marijuana must have come from Defendant Moore. The Court will discuss later why that declaration is not properly considered. Beyond that, Plaintiff produces no evidence

3

Eventually all four men were placed in custody and charged with possession of marijuana. At some point, Defendant Moore returned to the van and retrieved the remains of the marijuana cigar as evidence.

Defendant Moore and other officers then transported the four men back to the Detective Bureau at City Hall. Defendant Moore filed a report charging all four men with possession of marijuana.

At 1:30 p.m. on that day, the Macon Police held a press conference covering the morning's operation. Macon Police, specifically Public Information Officer Captain Eric Walker, alerted local news outlets via a Media Release sent an 12:37 p.m. that announced that the Macon Police Gang Unit and Bibb County Probation had conducted a joint operation resulting in the arrest of known gang members. The Media Release stated that the police would hold a press conference at 1:30 discussing the operation.

Defendant Sergeant Charles Whitaker conducted the press conference. At the press conference, Defendant Whitaker informed the media that the police and related agencies had conducted a gang round up that morning targeting certain gang locations and members that were on probation. Defendant Whitaker also stated that police had seized gang paraphernalia while searching several houses that morning. According to Defendant Whitaker, he did not give the names of anyone arrested that day during the press conference and furthermore that he did not know that Plaintiff, Hicks, Burton, and Carson had been arrested that morning at the time he gave the press conference. Captain Eric Walker testified during his deposition, however, that Defendant Whitaker

---

controverting the sequence of events described by Defendant Moore. Plaintiff also does not dispute that Hicks, Burton, and Carson were on probation and that there was a valid warrant for failure to appear against Plaintiff.

named the individuals arrested during the press conference.

At some point either before or after the press conference, Plaintiff, Hicks, Burton, Carson, and two other individuals were led from City Hall to police vans waiting in front of the building. Those police vans then transported them to the Law Enforcement Center. Several media members observed Plaintiff and the others being taken from City Hall to the waiting vans.

On December 6, 2008, Amy Leigh Womack, a reporter for the <u>Macon Telegraph</u> penned a short article concerning the police operation and press conference. The text of the <u>Macon Telegraph</u> article is set out below:

> Macon police officers arrested six people Friday after searching their homes. Police allege the suspects are gang members and said they had the right to search their homes because the five men and one woman are on probation. The police department called a news conference to make the announcement.
>
> During the news conference, police said they were targeting suspected gang members they believe to be affiliated with a group thought to be responsible for the fatal shooting of a man on Interstate 16 on Aug. 24.
>
> The eight homes searched turned up small amounts of marijuana and "gang paraphernalia," but no evidence connecting the suspects to the shooting.
>
> Sgt. Charles Whitaker described the "gang paraphernalia" as shirts, hats and other items bearing "gang markings."
>
> Most of the charges were for probation violation and misdemeanor drug charges. Police said they're getting warrants for two more home searches.
>
> Arrested were:
> - Anthony Xavier Grace, 39, of Grayson Avenue, probation violation, misdemeanor marijuana possession.
> - Terico Jacques Balkcom, 29, of Emery Highway, probation violation, misdemeanor marijuana possession.
> - Virgil Burton Jr., 37, of Second Avenue, probation violation, misdemeanor marijuana possession.
> - Tria Natassia Jones, 24, of Kitchens Road, probation violation, receiving stolen property.
> - Jeremy Hicks, 36, of Satterfield Drive, probation violation, misdemeanor marijuana possession.
> - Jacquian Carson, 25, of Lowe Court, probation violation, misdemeanor marijuana possession.

[Doc. 38-2]. Ms. Womack has no direct recollection of what was said during the press conference

or of writing the article. She admitted that she must have used information she learned during the press conference in writing the article. She also admitted that it was possible she used information from the 12:37 p.m. Media Release from Captain Walker and from another Media Release sent by Captain Walker at 4:43 p.m. The second Media Release states that it contains the names and charges from the press conference and perp walk conducted earlier that day and then lists the six individuals and the charges against them as set forth in the article. [Doc. 37 Ex. 2]. She also speculated that she may have spoken to an officer in preparing the article, but she no specific recollection of having done so.

The City of Macon prosecuted Plaintiff for misdemeanor possession of marijuana. The case proceeded to trial on June 25, 2009. At trial, Plaintiff was acquitted of the charge against him.

On December 4, 2009, Plaintiff filed this case against Defendants Moore and Whitaker, alleging that Defendants violated his Fourth and Fourteenth Amendment rights by engaging in false arrest, malicious prosecution, and defamation against him.[4] He also raised analogous claims under state law. After the close of discovery, Defendants filed a timely motion for summary judgment. That motion is now before the Court.

## II. LEGAL STANDARD

Motions for summary judgment in federal courts are governed by the Federal Rules of Civil Procedure. Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only

---

[4]     The false arrest and malicious prosecution claims were lodged only against Defendant Moore. The defamation claim was lodged against Defendants Moore and Whitaker.

a genuine issue of material fact will defeat a properly supported motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249–52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.  See id. at 254–55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097 (2000).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.  Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law.  See Celotex, 477 U.S. at 324-26.  This evidence must consist of more than mere conclusory allegations or legal conclusions.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  Celotex, 477 U.S. at 323.

### III. DISCUSSION

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute creates no protected rights, but instead provides a remedy for a violation of constitutional rights committed under color of state law. There is no debate that Defendants were acting under color of state law during all the events pertinent to this case. Thus, the issue under consideration, at least for Plaintiff's section 1983 claims, is whether Defendants violated Plaintiff's constitutional rights. Even assuming, however, that Defendants violated any of Plaintiff's constitutional rights, Defendants may still enjoy the protection of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).

Courts employ a two-part framework to evaluate qualified immunity claims.[5] In order to deprive a defendant of qualified immunity, a plaintiff must demonstrate both that a constitutional

---

[5] There is an often overlooked requirement that precedes that two-part inquiry: whether Defendant was acting within the scope of his discretionary authority. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Plaintiff makes the passing argument that Defendants were not acting in their discretionary authority because, in effect, they do not have the discretionary authority to act in a way that violates constitutional rights. Of course, if that argument accurately stated the law, qualified immunity would be largely meaningless. Defendants would never be entitled to qualified immunity when their actions violated constitutional rights because those actions would always be outside their discretionary authority. In any event, the law is clear that Defendants' actions in this case — arresting Plaintiff and conducting a press conference — are actions within their discretionary authority. See, e.g., id. (defendant acted within discretionary authority by arresting plaintiff).

violation occurred and that the constitutional right violated was clearly established.[6] Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). The court may analyze those two questions in whatever order is most appropriate in the case before it. Pearson v. Callahan, 555 U.S. 223, ___, 129 S. Ct. 808, 821 (2009).

The Complaint suffers from a lack of clarity as to whether Plaintiff intends only to pursue federal section 1983 claims that Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments or also the state tort law analogs of his section 1983 claims — in this case: false arrest, defamation, and malicious prosecution. Plaintiff begins his Complaint by stating he brings an action to recover damages and other appropriate relief under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, and the Equal Protection Clause of the Fourteenth Amendment. The Causes of Action presented in the Complaint are titled "Count One: 42 U.S.C. § 1983 (False Arrest)", "Count Two: 42 U.S.C. § 1983 (Defamation)", "Count Three: 42 U.S.C. § 1983 (Malicious Prosecution)". And numerous times in the Complaint, Plaintiff states that Defendants actions violated the provisions of 42 U.S.C. § 1983 to the injury of the Plaintiff. [See Doc. 1 ¶¶ 15, 16, & 19]. Within the individual counts, however, Plaintiff alleges that Defendants actions violated "the United States Constitution and 42 U.S.C. § 1983 as well as the laws of Georgia."

Defendants' Motion for Summary Judgment treats the Complaint as if it raises both section 1983 and state-law claims. For instance, in the motion for summary judgment, Defendants' primary arguments regarding the false arrest and malicious prosecution claims focus on section 1983 cases, but their arguments on the defamation claim focus on the elements of Georgia tort law. Then, later in their brief, Defendants contend that they are entitled to qualified immunity on Plaintiff's claims,

---

[6]     At the summary judgment phase, the Court answers these two questions taking the facts in the light most favorable to the plaintiff.

an argument that would only apply against a federal section 1983 claim.  However, Defendants also advance the argument that they are entitled to official immunity under Georgia law for any state law claims — including false arrest, defamation, and malicious prosecution claim.  Because Defendants have seen fit to address both the state law tort claims and their section 1983 analog, the Court will do likewise.

A.    Federal Claims

1.    Section 1983 False Arrest Claim Against Moore

Count I charges that Defendant Moore violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures when Defendant Moore arrested Plaintiff for possession of marijuana. Defendant Moore contends that he did not violate Plaintiff's Fourth Amendment rights when he arrested Plaintiff and that he is entitled to qualified immunity.

The Fourth Amendment guarantees the right against unreasonable searches and seizures. U.S. Const. amend. IV.  "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."  Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010).  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  Id.  In section 1983 cases, however, "an officer need not have actual probable cause, but only 'arguable' probable cause" in order to receive qualified immunity. Id.

"Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed

to arrest Plaintiff." Id. (internal quotation marks omitted). In order to determine whether an officer possessed probable cause or arguable probable cause, courts must evaluate the elements of the alleged crime and the fact pattern that the officer faced. Id. at 735. "Showing arguable probable cause does not, however, require proving every element of a crime." Id.

Plaintiff's section 1983 false arrest claim fails for two reasons. First, a valid warrant existed for Plaintiff's arrest. Second, Defendant Moore had probable cause to arrest Plaintiff for possession of marijuana.

There is no debate that a valid warrant existed for Plaintiff's arrest for failure to appear at the time of this incident. Defendant Moore stated that he was aware of the warrant at the time he arrested Plaintiff. Although Plaintiff attempts to intimate otherwise by stating that "Moore later claimed to have been aware" of the warrant at the time of arrest, Plaintiff has produced no evidence contradicting Defendant Moore's statement.

Nonetheless, Plaintiff argues that the valid outstanding warrant does not justify his arrest because Defendant Moore arrested him for possession of marijuana. The fact that Defendant Moore placed Plaintiff under arrest for possession of marijuana, and not failure to appear as per the warrant, does not vitiate the constitutionality of his arrest under the Fourth Amendment. The key question is whether Defendant Moore was justified in taking Plaintiff into custody. The Eleventh Circuit has held that "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (internal quotation marks omitted) (alteration in original). Thus, the rule is that "[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." Id. at 1196 (internal quotation marks omitted) (alteration in original). Plaintiff

has not argued that the warrant for his arrest was invalid or that Defendant Moore could not properly take him into custody pursuant to that warrant. His only argument is the warrant cannot justify his arrest for the stated offense of possession of marijuana if Defendant Moore did not have probable cause to arrest him for possession of marijuana. That argument, however, does not comport with the present state of the law.

Although the valid arrest warrant is sufficient to decide the issue of Plaintiff's section 1983 false arrest claim, the Court will also address whether Defendant Moore had probable cause or arguable probable cause to arrest Plaintiff for possession of marijuana. The Court addresses this argument both as a separate and independent basis for its ruling on Plaintiff's section 1983 false arrest claim and because it is also relevant to Plaintiff's section 1983 malicious prosecution claim.

Defendant Moore had probable cause to arrest Plaintiff for possession of marijuana. See O.C.G.A. § 16-13-30. Defendant Moore stated in his deposition that while conversing with Hicks and Burton, the occupants of the van, he saw the remains of a marijuana cigar roughly one to two inches long in the ashtray of the vehicle. His discussion with Hicks and Burton also revealed that Plaintiff, who was standing directly behind the van conversing with Carson, was the driver of the van. Given the presence of the marijuana in the van and Defendant Moore's knowledge that Plaintiff was the driver, Defendant Moore had probable cause to arrest Plaintiff for possession of marijuana. See, e.g., Maryland v. Pringle, 540 U.S. 366, 371-72, 124 S. Ct. 795, 800-01 (2003) (officer had probable cause to believe that occupant of vehicle committed crime of possession of cocaine when officer found baggies of cocaine accessible to all occupants and occupants failed to offer any information with respect to the ownership of the cocaine).

Plaintiff submitted a declaration along with his response to Defendants' Motion for Summary Judgment in which he attempted to create an issue of fact as to whether Defendant Moore saw any

marijuana in the vehicle. In his declaration, he stated that he vacuumed the van that morning; therefore, he knew it did not contain any extraneous material. [Doc. 38-1 ¶ 2]. He then asserted that Defendant Moore's statement that he saw a marijuana cigar in the console of the car was a fabrication for several reasons. First, none of the occupants of the car had been smoking marijuana while he was driving, and there was no odor of marijuana in the car. [Id. ¶ 5]. Second, the car did not have a console between the driver and front passenger seat. [Id.].[7] Third, Defendant Moore could not have seen a marijuana blunt that was only one to two inches long from where he was talking to Hicks and Burton. [Id.]. Finally, Plaintiff never saw any marijuana cigar from his vantage point in the driver's seat, and if there had been any marijuana in the front seat area, Plaintiff would have seen it from the driver's seat. [Id.]. Based on those alleged facts, Plaintiff asserted that none of occupants of the vehicle were ever in possession of any marijuana and that any marijuana recovered from the vehicle must have come from Defendant Moore. [Id.].

Plaintiff's declaration is not sufficient to create a question of fact as to whether Defendant Moore observed the marijuana cigar in the vehicle as he testified. In considering Plaintiff's declaration in light of his earlier deposition testimony two problems become apparent: his key contentions that none of the occupants of the vehicle were ever in possession of marijuana and that the marijuana must have come from Defendant Moore are either not based on Plaintiff's personal knowledge or are inconsistent with his earlier deposition testimony.

In order to create an issue of fact as to whether Defendant Moore had probable cause to

---

[7] Plaintiff tries to make something of an issue from the fact that Defendant Moore may have referred to seeing the marijuana cigar in the ashtray in the console of the van. According to Plaintiff, the van had no center console between the driver and front passenger seat; thus, Defendant Moore's testimony is a fabrication. Of course people often refer to the central portion of the dashboard where the ashtray is often located as the console.

arrest Plaintiff for marijuana possession, Plaintiff needs to produce evidence controverting Defendant Moore's assertion that he saw a marijuana cigar in the ashtray of the van while talking to Burton and Hicks. Rule 56 of the Federal Rules of Civil Procedure requires that an affidavit or declaration used to oppose a motion for summary judgment "be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). The majority of the facts that Plaintiff asserts in his declaration — that he vacuumed the car that morning, that no one smoked marijuana while he was driving, that there was no odor of marijuana in the car, and that he never saw any marijuana in the area that Defendant Moore recovered the marijuana — are all made on Plaintiff's personal knowledge. Those facts, however, only speak to the question of whether there was a marijuana cigar in the ashtray of the car when Plaintiff exited the car to speak with Carson. Even assuming all those facts to be true and that there was no marijuana cigar in the ashtray when Plaintiff exited the car, that fact does not conflict with Defendant Moore's assertion that he saw one in the ashtray when he was speaking with Hicks and Burton several minutes later. Likely mindful of the fact that a triable issue of fact would only exist if Plaintiff produced evidence that there was no marijuana in the car at the time that Defendant Moore allegedly saw the marijuana cigar, Plaintiff goes on to state that none of the occupants in the car possessed any marijuana and that the marijuana recovered by Defendant Moore must have come from Defendant Moore. But in asserting those two facts, Plaintiff necessarily implies that he was aware of what Hicks and Burton were doing in the van after he exited it. Plaintiff has failed, however, to establish any basis for having personal knowledge of what Hicks and Burton were doing in the van while he was talking to Carson. Indeed, in his deposition, he stated the opposite. When questioned whether he knew if Hicks or Burton placed anything in the ashtray after he left the van, he stated that he did not know. [Doc. 24-1 at 96]. That being the case, he has no personal knowledge of whether there was a marijuana cigar in the ashtray when Defendant Moore spoke to Hicks and

14

Burton.

The preceding discussion discloses the other problem with Plaintiff's declaration: to the extent that it implies he has the requisite personal knowledge of what occurred in the van after he exited it, his declaration clearly contradicts his earlier deposition testimony. "When a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assoc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). In his deposition Plaintiff clearly stated both that he did not know whether Hicks or Burton put anything in the ashtray after he exited the van, indicating that he lacked any personal knowledge of what Hicks and Burton might have done in the van, and that if something was in the ashtray it must have come from either Hicks or Burton. [Doc. 24-1 at 96]. Now, Plaintiff expressly contradicts both of those answers by stating that he knows that in fact Hicks or Burton did not put anything in the ashtray and that any marijuana must have come from Defendant Moore. Plaintiff has provided no explanation for why he now possesses the personal knowledge of what occurred in the van that he lacked at the time of his deposition or why that knowledge contradicts his previous assertion that any marijuana must have come from Hicks or Burton. That being the case, the Court is justified in disregarding Plaintiff's contradictory assertions from his declaration.[8]

_____

[8]     The Court notes that Plaintiff's declaration is also at odds with his testimony during his criminal trial. During his criminal trial, Plaintiff admitted that it was possible that Hicks or Burton had the marijuana on them when they got in the van, that one of them put it in the ashtray, and that it might have happened while he was outside the van so that he would not have seen it. [Doc. 38-3]. His deposition testimony was to the same effect. Now, by way of his declaration, he seeks to refute those answers by stating explicitly that he knows that neither Hicks nor Burton possessed any marijuana and by stating, perhaps more implicitly, that he knows that neither of them placed any marijuana in the ashtray of the van after he exited it.

Plaintiff's assertions in his declaration that no one in the van possessed any marijuana and that any marijuana must have come from Defendant Moore are justifiably disregarded because they contradict his earlier testimony without explanation and are not based on personal knowledge. Without those statements from his declaration, Plaintiff has no evidence controverting Defendant Moore's statement that he saw a marijuana cigar in the ashtray of the van while speaking to Hicks and Burton. Thus, there is no issue of material fact regarding whether Defendant Moore saw the marijuana cigar. Defendant Moore's observation of the marijuana cigar in the ashtray of the van that Plaintiff was sufficient to constitute probable cause to arrest Plaintiff for possession of marijuana.

2. Section 1983 Defamation Claim Against Moore and Whitaker

Plaintiff's defamation claim is based on certain statements published in the Macon Telegraph the day after his arrest. According to the Complaint, the Telegraph published an article stating that Macon Police Officers arrested six gang members on December 5, 2008. Furthermore, according to Plaintiff's reading, the article indicated that Plaintiff was one of those alleged gang members, that the police only arrested the alleged gang members after searching their homes, that the police had a right to search their homes because the alleged gang members were on probation, that the police were targeting suspected gang members when they arrested Plaintiff, that police found marijuana and gang paraphernalia in the alleged gang members' homes, and that the alleged gang members were affiliated with a group responsible for a fatal shooting. Plaintiff asserts that all of those statements were false in relation to him because: he is not a member of any criminal gang; the police did not search his home prior to his arrest; he was not on probation when he was arrested; he was not in possession of marijuana or gang paraphernalia when he was arrested; and he was in no way involved in any shooting. Plaintiff claims that these statements have caused damage to his reputation and to his livelihood. [Complaint ¶¶ 9-11, 24].

Courts recognize what might generally be termed as defamation claims as violations of due process cognizable under the Fourteenth Amendment. A defamation tort claim, however, "does not give rise to a § 1983 due process claim unless there is an additional constitutional injury alleged." Rehberg v. Paulk, 611 F.3d 828, 851 (11th Cir. 2010), cert. granted by Rehberg v. Paulk, 131 S. Ct. 1678 (2011). "The Supreme Court . . . has held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005) (citing Paul v. Davis, 424 U.S. 693, 701-02, 96 S. Ct. 1155, 1160-61 (1976)). Thus, "in order to invoke the procedural protections of the Due Process Clause, a plaintiff [must] establish *more* than a mere defamation claim." Id. A plaintiff must meet what courts have described as the "stigma-plus" test. Under that doctrine, a plaintiff must demonstrate "both a valid defamation claim (the stigma) *and* the violation of some more tangible interest (the plus)." Rehberg, 611 F.3d at 852 (internal quotation marks omitted).

Assuming for now that Plaintiff has produced sufficient evidence to support a valid state law defamation claim, he has failed to produce any evidence of the necessary "plus" to support a section 1983 defamation claim. The Complaint alleges that Plaintiff has suffered damage to his reputation and as a result, his livelihood.[9] Those allegations are quite similar to those in Rehberg that the alleged defamatory statements caused the plaintiff significant personal, professional, and economic damages. Id. The Eleventh Circuit described those allegations showing damage only to the plaintiff's reputation as "too generalized to show a previously recognized constitutional deprivation

---

[9] Furthermore, it is questionable as to whether the evidence even supports the allegation of damage to Plaintiff's livelihood. In his deposition, Plaintiff indicated he had no income for several years before the incident in question.

flowing from [the] alleged defamatory statements." Id. The same result follows here: Plaintiff's alleged damages to his reputation, both personal and professional, are insufficient to sustain a Fourteenth Amendment due process claim. See Siegert v. Gilley, 500 U.S. 226, 234, 111 S. Ct. 1789, 1794 (1991) ("But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a [section 1983] action.").

### 3. Section 1983 Malicious Prosecution Claim Against Moore

The Eleventh Circuit recognizes claims of malicious prosecution under section 1983 as violations of the Fourth Amendment. Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010). Of course, the Fourth Amendment does not refer to a right to be free of malicious prosecution; thus, referring to a federal right to be free of malicious prosecution is something of a misnomer. The right vindicated in cases presenting a section 1983 malicious prosecution claim "is actually . . . the right to be free from an unlawful seizure which is part of a prosecution." Whiting v. Traylor, 85 F.3d 581, 584 n.4 (11th Cir. 1996). Bearing that in mind, in order "[t]o establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." Grider, 618 F.3d at 1256. Although the elements of the common law tort of malicious prosecution are normally a question of state law, "a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003).

As to the first prong, for the purpose of a section 1983 malicious prosecution claim, the Eleventh Circuit defines the elements of the common law tort of malicious prosecution as: "'(1) a

criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" Grider, 618 F.3d at 1256 (quoting Wood, 323 F.3d at 882).

As to the second prong, "an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment"; thus, "the existence of probable cause defeats a § 1983 malicious prosecution claim." Id.

For the purpose of deciding Plaintiff's section 1983 malicious prosecution claim, only the second prong need be addressed. Assuming that Plaintiff was seized in relation to a judicial proceeding for possession of marijuana,[10] Plaintiff's seizure was not unreasonable because it was supported by probable cause. As outlined above, Defendant Moore had probable cause to arrest Plaintiff for possession of marijuana, and the existence of probable cause bars Plaintiff's section 1983 malicious prosecution claim. See Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003) (holding that existence of probable cause to arrest plaintiff barred plaintiff's section 1983 malicious prosecution claim).

B.    State Law Claims

Having granted summary judgment in favor of Defendants on all of Plaintiff's federal section 1983 claims, the Court must first consider whether it will continue to exercise supplemental jurisdiction over Plaintiff's state law claims. The Court has subject matter jurisdiction over this case

---

[10]    There is some reason to question that proposition in this case, but the parties do not argue it, and the relevant facts are not clear from the record. See Kingsland v. City of Miami, 382 F.3d 1220, 1235 (11th Cir. 2004) ("In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted. Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest." (internal quotations and citation omitted)).

based on Plaintiff's section 1983 claims. See 28 U.S.C. § 1331 (federal question jurisdiction). Because Plaintiff's state law claims are so related to Plaintiff's section 1983 claims as to constitute the same Article III case or controversy, the Court also has supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a).

In addition to conferring supplemental jurisdiction, section 1367 also authorizes courts to decline to exercise supplemental jurisdiction in certain circumstances. In particular, a district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). Although the decision lies within the sound discretion of the district court, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam). In exercising its discretion, the district court "should take into account concerns of comity, judicial economy, convenience, fairness, and the like." Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999).

In this case, the disposition of two of Plaintiff's state law claims, his false arrest and malicious prosecution claims, follows naturally and inescapably from the Court's ruling on his analogous section 1983 claims.

As set forth above, the Court found that Plaintiff's section 1983 false arrest claim failed because Defendant Moore was aware of the valid warrant for Plaintiff's arrest and because Defendant Moore had probable cause to arrest Plaintiff for possession of marijuana. The same result follows for Plaintiff's false arrest claim under state law. Georgia law provides: "An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." O.C.G.A. § 51-7-1. "Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire

20

to injure the accused." O.C.G.A. § 51-7-3. Georgia courts have further explained that "'[w]hoever arrests or imprisons a person *without a warrant* is guilty of a tort, unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law . . . .'" Jones v. Warner, 301 Ga. App. 39, 41 (2009) (quoting Collins v. Sadlo, 167 Ga. App. 317, 318 (1983)) (emphasis added; later emphasis removed). Thus, as was the case with the section 1983 false arrest claim, Defendant Moore's knowledge of the valid arrest warrant and his observation of facts giving rise to probable cause to arrest Plaintiff for possession of marijuana both defeat Plaintiff's false arrest claim under state law.

Turning to Plaintiff's state law malicious prosecution claim, Georgia law provides: "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." O.C.G.A. § 51-7-40. "The elements of malicious prosecution include: (1) prosecution for a criminal offense; (2) the prosecution instigated under a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff." Medoc Corp. v. Keel, 166 Ga. App. 615, 615-16 (1983). Again, the probable cause question is determinative. The record establishes, as a matter of law, the existence of probable cause to arrest Plaintiff for possession of marijuana and institute a prosecution for that offense. The existence of probable cause bars Plaintiff's state law malicious prosecution claim.

Concerns of comity and judicial economy do not counsel against the Court reaching those two claims. Quite to the contrary, they counsel in favor of it. Although formulated in slightly different terms, there is no discernable difference between federal and state law in the outcome of the probable cause inquiry, and the presence of probable cause dictates judgment in favor of Defendant Moore on those two claims as a matter of state law. Given that there is no discernable

difference in the probable cause inquiry between the federal and state law claims, the Court does not intrude on federal-state comity by deciding the probable cause inquiry for purposes of both claims. Because the probable cause inquiry is determinative of the state law claims, it would be a waste of judicial resources not to apply the probable cause finding and reach an ultimate determination on those two state law claims.

The same cannot be said, however, for Plaintiff's defamation claim. The Court decided Plaintiff's section 1983 defamation claim on an element specific to federal law — namely the requirement that Plaintiff demonstrate an injury to a liberty or property interest protected under the Fourteenth Amendment. The Court's finding that Plaintiff could not demonstrate an injury to such an interest says nothing about his state law defamation claim.

Instead, Defendants' arguments on Plaintiff's state law defamation claim are based purely on features of state law. Defendants make two primary arguments. First, Plaintiff cannot produce sufficient evidence that either Defendant published false or misleading information regarding Plaintiff. See Shannon v. Office Max N. Am., Inc., 291 Ga. App. 834, 837 (2008) ("The elements of a cause of action for defamation are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm."). Second, Defendants are protected by the public duty conditional privilege. See O.C.G.A. § 51-5-7(1) (according privilege to statements "made in good faith in the performance of a public duty"); Rabun v. McCoy, 273 Ga. App. 311, 316 (2005) (explaining that in order to be covered by the privilege, a statement must be made in good faith; thus, "[p]roof that the defendant acted with actual malice in making the statement . . . defeats the defense of privilege" (citing

O.C.G.A. § 51-5-9)).[11]

Concerns of comity and judicial economy counsel against the Court delving into those questions. In order to answer those questions, the Court would first be required to engage in a careful and close parsing of the record in order to determine what statements regarding Plaintiff might be fairly attributed to the <u>Macon Telegraph</u> article, and even more importantly, whether there is any evidence that any statements evidenced by that article are then attributable to Defendants Moore or Whitaker. Assuming there is evidence that certain statements are attributable to Defendants, the Court would also be required to further parse the record to attempt to uncover any evidence of bad faith or malice on the part of either defendant in making those statements. Those inquiries do not inform any part of the Court's disposition of Plaintiff's section 1983 claim, but are instead relevant only to the purely state law issues. Thus, there will be no duplication of effort if the Court saves such inquiries for a Georgia state court, and indeed by staying its hand, the Court protects federal-state comity by allowing a Georgia state court to make these fact bound determinations and apply them to questions of state law.

## IV. CONCLUSION

As set forth above, the Court finds that Defendants did not violate Plaintiff's Fourth or Fourteenth Amendment rights. Accordingly, the Court **GRANTS** summary judgment in favor of Defendants on Plaintiff's section 1983 claims alleging false arrest, malicious prosecution, and defamation. The Court also **GRANTS** summary judgment in favor of Defendants on Plaintiff's false arrest and malicious prosecution claims under state law. However, the Court declines to

---

[11] Defendants also assert that they are entitled to official immunity under Georgia law. By all appearances, the outcome of the official immunity inquiry would be the same as the public duty conditional privilege. Both are defeated by showings of bad faith or malice.

exercise supplemental jurisdiction over Plaintiff's state law defamation claim.  Accordingly, the

Court **DISMISSES** that claim **WITHOUT PREJUDICE**.


      SO ORDERED this 29th day of July, 2011.


                  <u>S/ C. Ashley Royal</u>
                  C. ASHLEY ROYAL, JUDGE
                  UNITED STATES DISTRICT COURT


bcw